**Robert Jack COLLIER, Relator,**

v.

**Honorable Ted POE, Judge, 228th District Court of Harris County, Respondent.**

No. 69739.

Court of Criminal Appeals of Texas, En Banc.

May 20, 1987.

Stanley G. Schneider, Ted Doebbler, Houston, for respondent.

David W. Bires, Debra Danburg, Houston, for relator.

Robert Huttash, State's Atty., Austin, for State.

## OPINION

ONION, Presiding Judge.

This is an original mandamus action brought by relator Collier seeking the issuance by this Court of a writ of mandamus to compel the respondent to vacate certain orders entered on January 2, 1987, and to grant relator's motions for legislative continuances in Cause Nos. 459,914 and 459,915 in the 228th District Court. The motions for continuance were filed by relator's counsel, David Bires, and co-counsel, the Honorable Debra Danburg, State Representative, under the provisions of V.T.C.A., Civil Practice and Remedies Code, § 30.003 (formerly 2168a, V.A.C.S.).

It appears that relator Collier had been separately indicted on October 10, 1986 in each of said cause numbers for the offenses of attempted murder and aggravated assault. Attorney Bires was the original and still current counsel for the relator Collier. On December 1, 1986, the cases were set for trial on January 5, 1987. On December 23, 1986 motions for legislative continuances were filed by Bires and Danburg. The motions for continuance were supported by affidavits of State Representative Danburg in compliance with said § 30.003. And it appears uncontroverted that Danburg was retained as an attorney for the relator more than ten (10) days in advance of the January 5, 1987 trial settings.

The motions for continuance were not controverted by any written motion or motions of the State setting forth any specific factual allegations, that if true, would dem-

onstrate irreparable harm or that substantial existing rights of the State would be defeated or abridged by any delay in the proceedings caused by the granting of the motions for continuance.

On January 2, 1987, the respondent, Judge Poe, conducted an evidentiary hearing on the motions for continuance. At the conclusion of which the motions were overruled and Judge Poe also entered an order prohibiting Danburg from being an attorney of record in said cause numbers.

After overruling the motions the court stated (1) that legislative continuances, "in this particular case" would violate Article I, § 13, Texas Constitution providing that all courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law, (2) that the statute providing for legislative continuances was a "self serving law passed by the legislators for their own self preservation," and (3) the said motions for continuance interfere "with the orderly administration of justice."

Thereafter relator filed his motion for leave to file his application for writ of mandamus in this Court. We stayed the proceedings in the said trial court numbers and ordered a response from the respondent. Subsequently on January 22, 1987, we granted leave to file and ordered the application for writ of mandamus to be filed and submitted. Texas Rules of Appellate Procedure, Rule 211. Oral arguments were later heard.

■ Article V, § 5, Texas Constitution, as amended November 4, 1980 (effective Sept. 1, 1981) provided that subject to such regulations as may be prescribed by law the Court of Criminal Appeals shall have the power to issue "in criminal law matters the writs of mandamus. . . ." See *State ex rel. Millsap v. Lozano*, 692 S.W.2d 470 (Tex.Cr.App.1985). See also Article 4.04, V.A.C.C.P. The instant proceedings involves the trial of criminal cases and the denial of motions for legislative continuances. This Court has jurisdiction of this criminal law matter.

The matter of a mandatory continuance based on the attendance at legislative sessions of an attorney in the case, civil or criminal, has long caused tension between the judicial and legislative branches of state government. The controversy has often swirled "in the press, court and legislative hall," *DeVries v. Taylor*, 505 S.W.2d 780 (Tex.1973), and the subject matter has frequently become a ballot box issue in legislative races.

■ It has been said that it is the inherent right of courts to determine the order of trials and to direct the method of their management in the administration of justice. 17 Am.Jur.2d, Continuance, § 2, p. 118. And as a general rule the determination of whether to grant a continuance lies with the sound discretion of the court. Tex.Jur.3d, Vol. 23, Criminal Law, § 2525, pp. 124–125.

■ At common law attendance upon the sessions of a legislative body was not a cause for continuance which a court was bound to recognize. *Johnson v. Theodoron*, 324 Ill. 543, 155 N.E. 481, 483 (1927). Thus absence of counsel in attendance in the Legislature is not in the absence of statute, a sufficient cause for continuance. 17 C.J.S., Continuances, § 37, p. 415.

And for this reason, commencing 58 years ago, the Texas Legislature has been enacting statutes pertaining to the granting of legislative continuances by the courts, once discretionary in nature and other times mandatory. The broad public policy behind such legislation in Texas and other states is or should be easily understood. Such legislation usually serves a dual purpose of encouraging good men and women to sacrifice their time in the interest of good government and of protecting a party to a law suit whose attorney may be serving in the Legislature. See *Bridges v. State Bd. of Registration for Healing Arts*, 419 S.W.2d 278 (Mo.App.1967). One of the best descriptions of the public policy supporting such legislation is found in *Bottoms v. Superior Court*, 82 Cal.App. 764, 256 P. 422, 424 (1927), which was quoted at length by the Texas Supreme Court in *Government Services Ins. Underwriters v.*

*Jones*, 368 S.W.2d 560, 565 (Tex.1963). It need not be repeated here.

Mandatory legislative continuances are frequently said to deprive the judiciary of its power to control the order of trials and its proper authority to administer justice, to particularly handcuff the trial court in its discretion, and to result in abuses by the lawyer/legislator to whom the right or privilege is granted. It is often charged that legislative continuances are utilized for the purpose of delay only, and that lawyer/legislators are employed for that purpose only.

Others argued that leaving the matter to the discretion of the court to determine whether the legislative continuance should be granted to insure a fair and proper trial results too often in arbitrariness of the court in overruling such a motion without any understanding of the public policy behind such legislation. The claims of "abuses" versus claims of "arbitrary actions" have invoked the constitutional issues of separation of powers doctrine, due process of law, due course of the law of the land, etc.

It is instructive that the history of the current legislative continuance statute (said § 30.003) and its forerunners be briefly examined.

Texas' first attorney/legislator continuance statute was enacted in 1929 (Acts 1929, 41st Leg., p. 17, ch. 7 [S.B. 356]),[1] which was codified as Article 2168a, V.A. C.S. The statute was a discretionary one and required continuance for the attorney/legislator when it appeared to the trial court that the presence of the legislator was necessary to a fair and proper trial. Nevertheless a broad public policy was declared. It was recognized that members of the Legislature must give constant and uninterrupted attention to their duties lest that bad legislation be enacted or good laws repealed, etc., and that when legislators are also lawyers they should be relieved by law from having to concern themselves with matters pertaining to their practice of law independent of their legislative duties. See Tex.Jur.3d, Vol. 23, Crim. Law, § 2525, p. 124.

While the 1929 statute was in effect the Court of Criminal Appeals decided three cases thereunder. They all involved direct appeals from criminal convictions where the legislative continuance motions had been overruled by the trial court in its discretion. In *Davis v. State*, 120 Tex. Cr.R. 330, 49 S.W.2d 805 (1932), the defendant had been represented by an able firm of attorneys at other trials of the case when the Legislature was not in session. The lawyer/legislator involved was not then of counsel. The legislative continu-

---

1. *"Be it enacted by the Legislature of the State of Texas:*

"SECTION 1. In all suits, either civil or criminal, or in matters of probate, pending in any court of this State at any time the Legislature is in session, it shall be sufficient ground for a continuance of such cause if it shall appear to the court, by affidavit, that any party applying for such continuance, or any attorney for any party to such cause, is a member of either branch of the Legislature, and is in actual attendance on a session of the same, and that the presence of party or attorney is necessary to a fair and proper trail (sic) of the cause. Where a party to any cause is a member of the Legislature his affidavit need not be corroborated but where a continuance is sought by reason of the fact that an attorney for any party is a member of the Legislature such affidavit shall be made by both the party and his said attorney. On the filing of such affidavit the court shall continue the cause until ten days after the adjournment of the Legislature and such affidavit shall be proof of the necessity for such continuance, and such continuance shall be deemed one of right and shall not be charged against the Defendant upon any subsequent application for continuance.

"SEC. 2. The fact that *a large number of the members of* both branches of the *Legislature are* engaged *in the practice of law*, and have suits pending in the courts of the State, *and* the fact that the *trials* of such *causes* necessarily requires such *members to absent themselves* from the meetings of the Senate and House *and thereby deprive the State of the service of such members and injure and hamper the Legislature in the dispatch of business*, creates an emergency and an imperative public necessity demanding the suspension of the constitutional rule, and requiring bills to be read on three several days in each House, and such rule is hereby suspended, and this act shall take effect and be in force from and after its passage, and it is so enacted." (Emphasis supplied.)

ance motion was presented while the original lawyers still represented Davis and was denied. On appeal this Court held that the granting of the continuance motion in absence of the new attorney was addressed to the sound discretion of the trial court and would not be reviewed in absence of a showing of probable injury to the defendant. The Court stated:

"Discretion in regard to such a ruling on the part of the trial court is believed to be an attribute inherent in the courts, and attempt to take it away by legislative enactment would seem a transgression by one department of our government upon the proper functions of a different and co-ordinate department thereof."

In *Burton v. State*, 129 Tex.Cr.R. 234, 86 S.W.2d 768 (1935), the motion was based on the fact that one of Burton's attorneys was a legislator, and a Called Session had adjourned less than 10 days prior to the time the case was called for trial. This Court on appeal held that the motion for legislative continuance was addressed to the sound discretion of the trial court and no abuse of discretion appeared where the accused had other counsel.

In *Burkhart v. State*, 114 Tex.Cr.R. 462, 26 S.W.2d 238 (1930), the motion based on one of Burkhart's lawyer's attendance upon a legislative session was held properly overruled by the trial judge because the affidavit in support of the motion did not aver that the lawyer/legislator's presence at the trial was "necessary to a fair and proper trial."

On the civil side it was held in *Watts v. City of Donna*, 43 S.W.2d 268 (Tex.Civ. App.—San Antonio 1931), that it was error for the trial court to have overruled the appellant's motion for continuance when the lead counsel was absent due to illness and the other counsel was in attendance on the Legislature as a member although the judgment entered after trial without participation by the appellant was null and void on another ground.

In *Antner, et al. v. State*, 122 S.W.2d 360 (Tex.Civ.App.—Ft. Worth 1938), involving an action to enjoin certain parties from operating an open saloon in violation of the law, it was held that denial of the legislative continuance motion was not erroneous since no injury to the defendants was shown, and where the appeal had become moot and was dismissed.

In 1939 the Legislature gave to the Supreme Court of Texas full rule-making power in civil judicial proceedings (Acts 1939, 46th Leg., p. 201, ch. 25, codified as Art. 1731a, V.A.C.S.). Pursuant to that authority the Supreme Court promulgated the Texas Rules of Civil Procedure in October, 1940 and submitted copies of the same to the members of the incoming Legislature by December 1, 1940 with the effective date of such new rules being September 1, 1941.

Rule 254 of the Texas Rules of Civil Procedure was the same as Article 2168a, supra, as enacted in 1929 with minor textual changes.[2] The rule, as well as the statute, left the matter with the sound discretion of the court.

During the 1941 legislative session the Legislature acted to authorize the Supreme Court to amend the already promulgated Rules of Civil Procedure prior to April 1, 1941. (Acts 1941, 47th Leg., p. 66, ch. 53, effective March 1, 1941.)

---

2. "Rule 254. Attendance on Legislature.—In all civil actions pending in any court of this State at any time the legislature is in session, it shall be sufficient ground for a continuance of such cause if it shall appear to the court, by affidavit, that any party applying for such continuance, or any attorney for any party to such cause, is a member of either branch of the legislature, and is in actual attendance on a session of the same, and that the presence of party or attorney is necessary to a fair and proper trial of the cause. Where a party to any cause is a member of the legislature his affidavit need not be corroborated but where a continuance is sought by reason of the fact that an attorney for any party is a member of the legislature such affidavit shall be made by both the party and his said attorney. On the filing of such affidavit the court shall continue the cause until ten days after the adjournment of the legislature and such affidavit shall be proof of the necessity for such continuance, and such continuance shall be deemed one of right and shall not be charged against the movant upon any subsequent application for continuance."

However, during the same legislative session Article 2168a, supra, was amended to make it a mandatory statute rather than a discretionary one. (Acts 1941, 47th Leg., p. 69, ch. 56, § 1.)[3] The Supreme Court was later to say that the amendment was in reaction to the decisions in *Davis, Burton* and *Burkhart,* supra, by the Court of Criminal Appeals. See *Mora v. Ferguson,* 145 Tex. 498, 199 S.W.2d 759, 762 (1947). No mention in the bill was made of said Rule 254 which was to become effective later that year and applicable only to civil proceedings.

And still later in the year one court refused to apply the 1941 version of Article 2168a retroactively in a civil case. *Zachary v. Overton,* et al., 157 S.W.2d 405 (Tex. Civ.App.—Galveston 1941). The Court found the employment of the legislator/lawyer was for the sole purpose of delay and no error resulted in overruling the continuance motion. No mention of the 1929 version of Article 2168a or Rule 254 was made.

In 1947 the Supreme Court of Texas interpreted the 1941 version of Article 2168a

in an original mandamus and prohibition action by Mora and his attorney, Senator Rogers Kelley against District Judge Bryce Ferguson, respondent. See *Mora v. Ferguson,* supra. This action grew out of a pending rape case at a time when the Supreme Court had full mandamus jurisdiction even in criminal cases and the Court of Criminal Appeals did not.[4]

The *Mora* Court held that the statute made it mandatory on the trial court to grant a continuance where the party or his attorney is a member of the Legislature and certain conditions are shown by affidavit. It made clear that under such circumstances the matter of continuance did not rest solely within the discretion of the trial court. The Court observed that Senator Kelley had been the sole counsel for Mora since his arrest. The Court declared the statute was not unconstitutional on the ground that it undertook to add to the privileges and immunities given members of the Legislature by express constitutional provision. Other constitutional grounds were not considered nor was said Rule 254

3. *"Be it enacted by the Legislature of the State of Texas:*

"Section 1. That Section 1 of Senate Bill No. 356 of the Regular Session of the 41st Legislature is hereby amended so as to read as follows:

" 'Section 1. In all suits, either civil or criminal, or in matters of probate, pending in any court of this State at any time within ten (10) days of a date when the Legislature is to be in session, or at any time the Legislature is in session, *it shall be mandatory that the court continue such cause* if it shall appear to the court, by affidavit, that any party applying for such continuance, or any attorney for any party to such cause, is a member of either branch of the Legislature, and will be or is in actual attendance on a session of the same. Where a party to any cause is a member of the Legislature, his affidavit need not be corroborated. On the filing of such affidavit, the court shall continue the cause until ten (10) days after the adjournment of the Legislature and such continuance shall be deemed one of right and shall not be charged against the party receiving such continuance upon any subsequent application for continuance. *It is hereby declared to be the intention of the Legislature that the provisions of this section shall be deemed mandatory and not discretionary.'*

"Sec. 2. The fact that a large number of the members of both branches of the Legislature are engaged in the practice of law and

have suits pending in the courts of the State, and the fact that the trials of such causes would necessarily require such members to absent themselves from the meetings of the Senate and House, and thereby deprive the State of the service of such members and injure and hamper the Legislature in the dispatch of business, and the fact that the courts have construed the present law providing for continuance to be discretionary and not mandatory, creates an emergency and an imperative public necessity demanding the suspension of the Constitutional Rule requiring bills to be read on three several days in each House, and also the suspension of the Constitutional Rule which provides that laws shall not become effective until the expiration of ninety days after the adjournment of the session; and such Rules are hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted." (Emphasis supplied.)

4. See *Fariss v. Tipps,* 463 S.W.2d 176 (Tex.1971); *Pope v. Ferguson,* 445 S.W.2d 950 (Tex.1969), cert. den., 397 U.S. 997 90 S.Ct. 1138, 25 L.Ed.2d 405 (1970). Since the amendment of Article V, § 5, Tex. Constitution, in 1977 and 1980, see *Thomas v. Stevenson,* 561 S.W.2d 845 (Tex.Cr. App.1978).

mentioned as it was applicable, if at all, only to civil cases.

In 1949 the Legislature again amended Article 2168a, supra, making it applicable to "all suits, either civil or criminal or in matters of probate" and reiterating the mandatory language of the 1941 version. The only change was the provision for a legislative continuance if within 30 days before and after a session of the Legislature rather than the 10 days as in the earlier version. The emergency clause noted that Rule 254 of the Rules of Civil Procedure had in civil actions superseded the 1929 and 1941 enactments creating "an emergency." (Acts 1949, 51st Leg., p. 1111, ch. 569.)[5]

In 1954 the Court of Criminal Appeals decided *King v. State,* 160 Tex.Cr.R. 556, 273 S.W.2d 72 (1954), a murder conviction on direct appeal which involved the 1949 version of Article 2168a, supra. This Court observed that the 1941 version of the statute had been interpreted by the Supreme Court as being mandatory in *Mora* and only had been slightly changed. Noting that when a statute is of a nature that it might be construed in one court as well as another respect is to be given to the decision of the court giving the first interpretation, *Redman v. State,* 67 Tex.Cr.R. 374, 149 S.W. 670 (1911), the Court held the

1949 statute mandatory. The Court then added:

"The evidence heard by the trial court on the application for a continuance in this case fully supports his (sic) finding that the *application was a clear abuse of the privilege by one entitled to claim it under said statute;* however, we are constrained to hold that, *under the terms of the statute* and the application setting forth the necessary requirements, *the trial court was not authorized to overrule the motion* because of such finding, and the continuance should have been granted." (Emphasis supplied.)

It has been said that "no recorded decision in any other state has gone this far" in legislative continuance cases and that *King* was an "extreme" decision. Philip F. Patman, Note, Texas Law Review, Vol. 42, pp. 391, 396, 398.

In 1955 the Texas Supreme Court, while acknowledging the mandatory nature of Article 2168a, supra, decided that a suit to perpetuate testimony did not fall within the ambit of the statute. *Ramsey v. Gardner,* 154 Tex. 457, 279 S.W.2d 584 (1955). Likewise in *Shumard v. Scalan,* 163 Tex. 306, 346 S.W.2d 595 (1961), that Court decided

---

5. *"Be it enacted by the Legislature of the State of Texas:*

"Section 1. Senate Bill No. 356, Acts of the Forty-first Legislature, 1929, page 17, Chapter 7, as amended by Senate Bill No. 136, Acts of the Forty-seventh Legislature, Regular Session, 1941, Chapter 56, page 69, is hereby re-enacted so as to hereafter read as follows:

" 'In all suits, either civil or criminal, or in matters of probate, pending in any court of this State at any time within thirty (30) days of a date when the Legislature is to be in Session, or at any time the Legislature is in Session, it shall be mandatory that the court continue such cause *if it shall appear to the* court, by affidavit, that any party applying for such continuance, or any attorney for any party to such cause, is a Member of either branch of the Legislature, and will be or is in actual attendance on a Session of the same. Where a party to any cause is a Member of the Legislature, his affidavit need not be corroborated. On the filing of such affidavit, the court shall continue the cause until thirty (30) days after the adjournment of the Legislature and such affidavit shall be proof of the necessity of such continuance, and such continu-

ance shall be deemed one of right and shall not be charged against the party receiving such continuance upon any subsequent application for continuance. It is hereby declared to be the intention of the Legislature that the provisions of this Section shall be deemed mandatory and not discretionary.'

"Sec. 2. The fact that Rule No. 254 of the Rules of Civil Procedure, as authorized by Senate Bill No. 92, Acts of the Forty-seventh Legislature, Regular Session, 1941, Chapter 53, page 66, has superseded, in so far as civil actions are concerned, the provisions of Senate Bill No. 356, Acts of the Forty-first Legislature, 1929, page 17, Chapter 7, as amended by Senate Bill No. 136, Acts of the Forty-seventh Legislature, Regular Session, 1941, Chapter 56, page 69, and due to the crowded condition of the calendar in both Houses of the Legislature, create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and said Rule is hereby suspended, and that this Act shall be in force and effect from and after its passage, and it is so enacted."

the taking of a deposition was not within the purview of the statute and expressly reserved the question of the constitutionality of the statute on the basis of "invading the powers of the judiciary as has been held by courts in some states in passing upon the validity of similar statutes." 346 S.W.2d at p. 598.

And then along came *Government Services Ins. Underwriters v. Jones*, 368 S.W.2d 560 (Tex.1963). Insurance company liquidation proceedings were pending in the district court of Travis County when State Senator (now Justice) Franklin Spears was employed by one or more defendants in October 1962, before the 1963 legislative session. In April 1963, while the Legislature was in session, a legislative continuance motion in compliance with Article 2168a, supra, as amended in 1949, was filed but overruled by District Judge Herman Jones on the basis that the mandatory nature of the statute rendered the same unconstitutional under Article II, § 1 of the Texas Constitution involving the separation of powers doctrine. Relators applied to the Texas Supreme Court for an original writ of mandamus to compel the district judge to order a continuance in accordance with *Mora.*

The Supreme Court conditionally granted the requested writ holding that Article 2168a was a valid limitation by the Legislature on judicial power. The general constitutional rule is expressed in Article II, § 1 of the State Constitution that no person or collection of persons of one of the three branches or departments of state government shall exercise any power properly attached to the other except as expressly permitted by the Constitution. *Government Services Insurance Underwriters Co. v. Jones*, however, constitutes a judicially recognized exception to the general rule. The Supreme Court, speaking through Justice Norvell, found that there are accepted areas of valid legislative concern and control within the judicial sphere.[6] Justice Norvell pointed out there are proceedings in court which are recognized to be essentially legislative rather than judicial in character[7] and reasoned that the general rule does not mean there is not or cannot be interrelation between the branches of government, the three branches being viewed as interdependent rather than completely independent.[8] The Court thus held

6. Examples given in the 1963 opinion involved legislative setting of terms of district courts, legislative promulgation of rules of evidence, *legislative control of continuances in criminal cases* and supreme legislative authority, then delegated to the Supreme Court, to make rules of civil procedure. More current examples readily come to mind (Acts 1985, 69th Leg., p. 5136, ch. 685) authorizing the Court of Criminal Appeals to make Posttrial, Appellate and Review Procedure in Criminal Cases and to make certain rules of evidence in criminal cases.

7. "However, the problem of determining that which is judicial and that which is legislative is often difficult of statement under varying factual circumstances. Classification may depend upon the particular nomenclature and definitions employed in the field of learning with which one is concerned. * * *
"In determining whether or not the exercise of a power by one branch of government is an unauthorized invasion of the realm or jurisdiction of another branch, we must consider the relationship of the various governmental departments as set forth and defined in the Texas Constitution for that which is permitted by the Constitution cannot be unconstitutional. The power and authority of a state legislature is plenary and its extent is limited only

by the express or implied restrictions thereon contained in or necessarily arising from the Constitution itself. ..." 368 S.W.2d at pp. 562–563.

8. "... We speak of the American system of separation of powers and checks and balances. These are seemingly contradictory terms and it should be recognized that all three branches of government are to some extent interdependent. A mandatory continuance by legislative enactment will undoubtedly interfere somewhat with the operations of the judicial department of government. On the other hand when a court requires that the legislator-attorney be in attendance upon it while the Legislature is in session some interference with the legislative process necessarily takes place. *The statutory right or privilege of the legislator is undoubtedly subject to abuse, but so is the discretion of the judge.* It is primarily the responsibility of the respective branches of government to curb abuses within their particular spheres. While a continuing failure to meet this responsibility may indicate a need for constitutional change, the circumstance that a power may be abused is not a valid basis for arguing that the power is non-existent." 368 S.W.2d at pp. 564–565.

the statute did not violate the separation of powers doctrine. In its opinion the Supreme Court expressly reserved due process questions concerning the statute involving the Fourteenth Amendment, United States Constitution, and Article I, §§ 13 and 19 of the State Constitution.[9] See Note, Texas Law Review 42, p. 391, supra.

In *Hatten v. City of Houston*, 373 S.W.2d 525 (Tex.Civ.App.—Houston 1963), err. ref'd, n.r.e., the court acknowledged that Article 2168a, as amended in 1949, was mandatory.

Citing *Mora* and *King* the Court of Criminal Appeals also recognized the mandatory nature of the 1949 version of Article 2168a, supra, and ordered reversals in *Ex parte Browder*, 373 S.W.2d 256 (Tex.Cr.App. 1963) and *Cuellar v. State*, 521 S.W.2d 277 (Tex.Cr.App.1975).[10] Cf. *Bradley v. State*,

450 S.W.2d 847 (Tex.Cr.App.1969) (where the overruling of the motion was not error when the Legislature was not in session and other time provisions of the statute were not applicable and the requisite affidavit was not filed).

In 1973 the statute was once again amended. It maintained its mandatory nature, and expressly repealed said Rule 254, and all laws in conflict therewith. Recognizing that the statute had been the subject of abuse by legislator/lawyers, the amendment provided a statutory exception where the attorney had not been "employed within 10 days of the date such suit is set for trial" and left the matter of continuance within the court's discretion in that situation. (Acts 1973, 63rd Leg., p. 1130, ch. 428.)[11]

9. The Court did not consider that these questions were effectively raised despite the Attorney General's (representing the respondent) attempt to expand his original position in his motion for rehearing.

10. *Cuellar* involved convictions for rape where the trials occurred in 1972.

11. *"Be it enacted by the Legislature of the State of Texas:*

"Section 1. Acts 1929, 41st Legislature, Regular Session, page 17, Chapter 7, Section 1, as amended by Acts 1941, 47th Legislature, Regular Session, page 69, Chapter 56, Section 1, as further amended by Acts 1949, 51st Legislature, Regular Session, page 1111, Chapter 569, Section 1, known and codified as Article 2168a, Vernon's Annotated Civil Statutes of the State of Texas, be and the same is hereby amended so as hereafter to read as follows:

"'Art. 2168a. Attendance on Legislature

"'In all suits, either civil or criminal, or in matters of probate, pending in any court of this State, and in all matters ancillary to such suits which require action by or the attendance of an attorney, including appeals but excluding temporary restraining orders, at any time within thirty (30) days of a date when the Legislature is to be in Session, or at any time the Legislature is in Session, or when the Legislature sits as a Constitutional Convention, it shall be mandatory that the court continue such cause if it shall appear to the court, by affidavit, that any party applying for such continuance, or any attorney for any party to such cause, is a Member of either branch of the Legislature, and will be or is in actual attendance on a Session of the same. If the member of the Legislature is an attorney for a party to such cause, his affidavit shall contain a declaration that it is his inten-

tion to participate actively in the preparation and/or presentation of the case. Where a party to any cause or an attorney for any party to such cause is a Member of the Legislature, his affidavit need not be corroborated. On the filing of such affidavit, the court shall continue the cause until thirty (30) days after the adjournment of the Legislature and such affidavit shall be proof of the necessity for such continuance, and such continuance shall be deemed one of right and shall not be charged against the party receiving such continuance upon any subsequent application for continuance. It is hereby declared to be the intention of the Legislature that the provisions of this Section shall be deemed mandatory and not discretionary.

"'Notwithstanding the foregoing, the right to such continuance, where such continuance is based upon an attorney in such cause being a member of the Legislature, shall be discretionary with the Court in the following situations and under the following circumstances, and none other, to wit:

"'(1) Where such attorney was employed within 10 days of the date such suit is set for trial.'

"Sec. 2. Rule 254, Texas Rules of Civil Procedure, is hereby repealed to the extent of any inconsistency with the provisions of this Act, and said Rule is hereby conformed to the provisions hereof.

"Sec. 3. All laws and rules, or parts of laws or parts of rules, in conflict herewith are hereby repealed to the extent of such conflict; and in the event of conflict between this Act and any other statute or rule, the provisions of this Act shall prevail.

"Sec. 4. The fact that mandatory continuance of suits for Members of the Legislature

The statutory exception above described was applied and the denial of the legislative continuance was upheld in *DeVries v. Taylor*, 505 S.W.2d 780 (Tex.1973). And in *Schwartz v. Jefferson*, 520 S.W.2d 881 (Tex.1975), the Court observed, in granting a conditional mandamus, that the 1973 mandatory amendment was still alive and well.[12] In *Glover v. State*, 532 S.W.2d 346 (Tex.Cr.App.1976), a misdemeanor conviction was reversed by this Court for the failure of the trial judge to comply with Article 2168a, and in *Ex parte Smith*, 555 S.W.2d 756 (Tex.Cr.App.1977), it was observed that the trial judge had no discretion when the requirements of the statute had been met. See and cf. *Ex parte King*, 613 S.W.2d 503, 504 (Tex.Cr.App.1981).

Despite the mandatory nature of the 1973 version of Article 2168a, the Supreme Court of Texas fashioned a due process exception thereto in *Waites v. Sondock*, 561 S.W.2d 772 (Tex.1977), where the trial court had granted the legislative continuance motion. This cause involved an original mandamus action regarding the granting of a legislative continuance in a child support case. In *Waites* the Court held that it was a violation of due process to require mandatory legislative continuances when the party opposing such continuance or a person in their charge face irreparable harm from delay in enforcing substantial existing rights. The decision was based upon the due process clause of the Fourteenth Amendment of the United States

Constitution and upon Article I, §§ 13 (Open Courts)[13] and 19 (due course of the law of the land) of the Texas Constitution. The question decided in *Waites* was the very question expressly reserved in *Government Services Ins. Underwriters v. Jones*, supra.

The *Waites* Court, speaking through Justice Yarbrough, stated:

"We agree with the conclusions of these courts[14] insofar as their decisions deal with the constitutionality of mandatory legislative continuances *when the non-moving party faces irreparable harm*. At the same time we reiterate the limited nature of our holding: *a legislative continuance is mandatory except in those cases in which the party opposing* the continuance *alleges that a substantial existing right will be defeated or abridged by delay*. In cases of this type the trial court has a duty to conduct a hearing on the allegations. If the allegations are shown to be meritorious the court should deny the continuance."

Thus the Court held the statute (2168a) unconstitutional as applied to Mrs. Waites. See *Sax v. Votteler*, 648 S.W.2d 661, 665 (Tex.1983). *Waites* was later applied in *Condovest Corp. v. John Street Builders*, 662 S.W.2d 138 (Tex.App.—Austin 1983).

In *Curry v. Ater*, 648 S.W.2d 10 (Tex.Cr. App.1983), this Court once again held that the granting of a legislative continuance motion was mandatory if it conforms with

has been the subject of some abuse, and the fact that on occasion it has appeared that such mandatory continuances have been used solely for the purpose of delay, and the crowded condition of the calendars in both Houses of the Legislature, create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House, and the Constitutional Rule that bills shall not be effective until 90 days after the adjournment of the Legislature, be and such Rules are hereby suspended, and this Act shall be in full force and effect from and after its passage, and it is so enacted."

**12.** *Schwartz v. Jefferson* held that a civil suit is no longer "pending" within the meaning of Article 2168a after the suit has proceeded to final judgment from which no appeal was perfected.

**13.** In *Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex. 1983), it was pointed out that the State Constitution contained two separate due process provisions. Article I, §§ 13 and 19. The Court, speaking through Justice Kilgarlin, wrote:

"While it is true that this provision [Art. I, § 13] is sometimes referred to as the 'Open Courts Provision' it is quite plainly, a due process guarantee. See *Hanks v. City of Port Arthur*, 121 Tex. 202, 48 S.W.2d 944, 945 (1932); 1 Braden, The Constitution of Texas, An Annotated an Comparative Analysis 50 (1977).

**14.** See *ABC Business Forms, Inc. v. Spaet*, 201 So.2d 890 (Fla.1967); *Thurmond v. Superior Court*, 66 Cal.2d 836, 59 Cal.Rptr. 273, 427 P.2d 985 (1967). Neither of these cases was decided, however, on the basis of due process of law.

the statutory requirements. Judge Ater denied the legislative continuance motion of State Senator Craig Washington filed in a habeas corpus proceeding in which Curry sought to prevent extradition. Curry sought relief by original mandamus action in this Court. In *Curry* this Court found that Senator Washington was outside the statutory exception [Article 2168a(1)] having been employed more than 10 days before the trial date, and applying the second and due process exception of *Waites* found that the State of Virginia, the demanding state, had not alleged or pointed out what substantial existing right or rights would be defeated or abridged by delay resulting from the granting of a continuance. The application of the due process exception in *Curry* was without discussion of the applicability of such exception in criminal cases.

In 1985 Article 2168a, V.A.C.S., was once again amended and encompassed within the Civil Practice and Remedies Code (Acts 1985, 69th Leg., ch. 959, § 1, effective Sept. 1, 1985). Section 10 of said enactment provides:

"Legislative Intent. This Act is enacted pursuant to Article III, Section 43 of the Texas Constitution. This Act is intended as a recodification only, *and no substantive change in the law is intended by this Act.*"[15] (Emphasis supplied.)

Section 30.003 (Legislative Continuance) replaced the former statute. It reads:

"(a) This section applies to any criminal or civil suit, including matters of probate, and to any matters ancillary to the suit that require action by or the attendance of an attorney, including appeals but excluding temporary restraining orders.

"(b) Except as provided by Subsection (c), at any time within 30 days of a date when the legislature is to be in session, at any time during a legislative session, or when the legislature sits as a constitutional convention, the court on application shall continue a case in which a party applying for the continuance or the attorney for that party is a member of the legislature and will be or is attending a legislative session. The court shall continue the case until 30 days after the date on which the legislature adjourns.

"(c) If the attorney for a party to the case is a member of the legislature who was employed within 10 days before the date on which the suit is set for trial, the continuance is discretionary with the court.

"(d) the party seeking the continuance must file with the court an affidavit stating the grounds for the continuance. The affidavit is proof of the necessity for a continuance. The affidavit need not be corroborated.

"(e) If the member of the legislature is an attorney for a party, the affidavit must contain a declaration that it is the attorney's intention to participate actively in the preparation or presentation of the case.

"(f) The continuance provided by Subsection (b) is one of right and may not be charged against the party receiving it on

---

**15.** Section 1.001 of the Civil Practice and Remedies Code reads:

"(a) This code is enacted as a part of the state's continuing statutory revision program, begun by the Texas Legislative Council in 1963 as directed by the legislature in Chapter 448, Acts of the 58th Legislature, Regular Session, 1963 (Article 5429b–1, Vernon's Texas Civil Statutes).[1] The program contemplates a topic-by-topic revision of the state's general and permanent statute law *without substantive change.*

"(b) Consistent with the objectives of the statutory revision program, the purpose of this code is *to make the law* encompassed by this code *more* accessible and *understandable,* by:

"(1) rearranging the statutes into a more logical order;

"(2) employing a format and numbering system designed to facilitate citation of the law and to accommodate future expansion of the law;

"(3) eliminating repealed, duplicative, unconstitutional, expired, executed, and other ineffective provisions; and

"(4) *restating the law in modern American English to the greatest extent possible.*

"1 "Repealed; see, now, V.T.C.A., Government Code, §§ 323.007, 323.008." (Emphasis supplied.)

any subsequent application for continuance."

While the phrases "it shall be mandatory that the court continue such cause...." and "It is hereby declared to the intention of the Legislature that the provision of this Section shall be deemed mandatory and not discretionary" are missing from the 1985 amendment, a reading of the statute in light of the legislative intent expressed in the said Code convinces this Court that the statute is still a mandatory one. And it is this statute which is applicable to the case before us.

Section 30.003 retained the statutory exception from the earlier statute, but it is undisputed that in the instant case Representative Danburg was employed as counsel in the criminal cases involved within 10 days before the trial setting. See Subsection (c) of § 30.003. This brings us to the due process exception enunciated in *Waites* and recognized by this Court in criminal cases in *Curry*. This new enactment does not apparently eliminate the necessity of the due process exception, but the question which now presents itself is whether that exception can have application to criminal cases.

Article 3.02, V.A.C.C.P., provides:

"*A criminal action is prosecuted in the name of the State of Texas* against the accused, and is conducted by some person acting under the authority of the State, in accordance with its laws." (Emphasis supplied.)

Black's Law Dictionary, Fifth Edition (1979), West Publishing Company, p. 1262, defines "State" in one of its meanings as

"The people of a state, in their collective capacity, considered as the party wronged by a criminal deed; the public; as in the title of a cause, 'The State v. A. B.'"

"The concept that the state has a special interest in the prosecution of criminal cases that requires the presence of a professionally trained advocate arose during the formative period of American

law. Earlier in England, it had been assumed that prosecution was a matter for the victim, his family, or friends.[1] *The idea that criminal law, unlike other branches of the law* such as contracts and property, *is designed to vindicate public rather than private interests is now firmly established....*

[1] "See M. Schwartz, Cases and Materials on Professional Responsibility and the Administration of Criminal Justice 4–5 (1961)." American Bar Standards for Criminal Justice, Second Edition, Volume 1, Chapter 3, § 2.1, Commentary. (Emphasis supplied.)

Article 2.01, V.A.C.C.P., provides that each district attorney shall represent the State in all criminal cases in the district courts of his district. See also Article 2.02 as to duties of County Attorneys, and Article V, § 21, Tex. Const.

The significance of this is that the State is not entitled to the due process of law usually because of the very wording of the various provisions.

■ The rights created by the first section of the Fourteenth Amendment are, by its very terms, guaranteed to the individual. The rights established are personal rights. *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 846, 92 L.Ed. 1161 (1948).[16]

■ An agency or political subdivision of the State cannot invoke the protection of the Fourteenth Amendment against the State itself. *Alexander Milburn Co. v. Davis Bournonville Co.*, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926); *City of Trenton v. New Jersey*, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923); *City of New York v. Richardson*, 473 F.2d 923 (2nd Cir.1973), cert. den., *Lavine v. Lindsay*, 412 U.S. 950, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973); *Arkansas State Hospital v. Goslee*, 274 Ark. 168, 623 S.W.2d 513 (1981). Thus political subdivisions of the State may not challenge the validity of a state statute under the Fourteenth Amendment. *City of New York v. Richardson*, supra. See also *Village of Arlington*

**16.** Further, the word "person" in the context of the due process clause of the Fifth Amendment cannot by any reasonable mode of interpreta-

tion, be expanded to encompass the States of the Union. *South Carolina v. Katzenbach*, 383 U.S. 301, 86 S.Ct. 803, 816, 15 L.Ed.2d 769 (1966).

*Heights v. Regional Transportation Authority,* 653 F.2d 1149 (7th Cir.1981); *South Macomb Disposal Authority v. Township of Washington, et al.,* 790 F.2d 500 (6th Cir.1986).

And in Texas it has been said that neither the State nor any agency of the State is entitled to due process of law. *McGregor v. Clawson,* 506 S.W.2d 922 (Tex.Civ. App.—Waco 1974).[17] See also *Hill v. Texas Water Quality Board,* 568 S.W.2d 738, 739 (Tex.Civ.App.—Austin 1978), writ ref'd n.r.e., and *Boyett v. Calvert,* 467 S.W.2d 205, 210 (Tex.Civ.App.—Austin 1971), writ ref'd n.r.e., appeal dismissed for want of federal question *sub nom Anderson v. Calvert,* 405 U.S. 1035, 92 S.Ct. 1316, 31 L.Ed.2d 577 (1972). In *State ex rel. Turner v. McDonald,* 676 S.W.2d 371, 373 (Tex. Cr.App.1984), this Court stated "... and Respondent is correct that due process *and due course of law* are guarantees to citizens and not governments or their agents." (Emphasis supplied.)

While the two separate due process provisions of the State Constitution, Article I, §§ 13 and 19, may be worded differently than the Fourteenth Amendment, we cannot conclude that they may be interpreted to provide that the State or any agency thereof is entitled to due process.

Thus the due process exception to the legislative continuance statute fashioned in *Waites* is not applicable to criminal cases. Such "exception" may not be invoked by the prosecutor, either county or district attorney, to protect interests of the State that are not covered by the Fourteenth Amendment, United States Constitution, or Article I, §§ 13 and 19 of the Texas Constitution. To the extent that *Curry v. Ater,* supra, is in conflict with this holding, it is overruled.[18] With regard to the instant proceeding, the due process exception is not applicable.[19]

Respondent in his response also urges that § 30.003 is unconstitutional in light of

---

17. "An agency created by a State has no privileges, immunities, or rights under the State and Federal Constitutions which it may invoke in opposition to the will of its creator. [Citations omitted.] In other words, a State has no standing to assert that *one of its own legislative enactments* denies it constitutional due process or deprives it of equal protection of the laws. The same rule applies to the State's agencies." 506 S.W.2d at p. 929.

18. The result reached in *Curry* was correct. We now determine that it was unnecessary to attempt to apply the *Waites* exception there.

19. Even if it could be argued that the due process exception applied, it would not call for a different result. The State filed no motion or motions opposing relator's motions for legislative continuance alleging that a substantial existing right would be defeated or abridged by delay. Although evidence was offered in opposition to the motions for continuance, there was no showing the State itself faced irreparable harm or that any substantial right would be defeated or abridged by the delay resulting from any continuance.

Raymond Gowdey, the 29–year-old stepson of the defendant, testified he had moved from the trailer house he was renting from appellant some distance from the home where the alleged offenses occurred. He testified he and his wife and baby were fearful but he had not seen the defendant until the hearing. Whether he was to be a witness at trial is not made clear by the record. When asked if he would be affected if the case was reset, he answered, "Well, myself I think I could handle it pretty well."

Douglas R. Stewart, a neighbor, testified no one now lived at the house where the alleged offenses occurred, that he took care of the property and one morning saw tire tracks in the defendant's yard, but he had not seen the defendant there. He did not witness the alleged offenses but only saw the results of the "fight." He traveled and expressed some concern about his family while he was gone.

Jimmy Dale Collier, wife of the defendant and a complaining witness, testified she now lived in Houston and was in the process of a divorce, but had even left the State for a period of time due to fear of the defendant, that she was under the care of an osteopath, that her children lived in different places, that she was nervous and fearful the defendant would carry out previous threats. She had not seen nor heard from the defendant, who was out on bond, since the alleged offenses until the hearing.

Doyelle Maines, 16–year-old stepdaughter of the defendant and a complaining witness, testified she was living apart from her mother, could not sleep at night, and was fearful of defendant though she had not seen him since the alleged offenses until the hearing.

The testimony given would be common testimony among prospective witnesses in many criminal cases where the delay in trial is caused by reasons other than legislative continuances. Further, there is nothing to show that an immediate trial, regardless of the outcome, would change all witnesses' concerns, or that there were no other legal remedies available.

the separation of powers doctrine, Article II, § 1, Texas Constitution. If it can be argued that the contention has been properly raised, it is observed that the Supreme Court of Texas rejected such contention in *Government Services Ins. Underwriters v. Jones,* supra, when interpreting Article 2168a, as amended 1949, supra, a forerunner of § 30.003, both being mandatory statutes dealing with the same subject matter. And the 1949 act is not at material variance with the current statute. Cf. *Ex parte Sumner,* 143 Tex.Cr.R. 238, 158 S.W.2d 310 (1942).

While the doctrine of stare decisis should be controlling only if it makes sense or follows logical reasoning, it is a rule of precedent, *Young v. State,* 488 S.W.2d 820 (Tex.Cr.App.1972), and creates a strong presumption in favor of established law. *Gutierrez v. Collins,* 583 S.W.2d 312 (Tex.1979). The doctrine has its greatest force in the area of statutory construction. *James v. Vernon-Calhoun Packing Co.,* 498 S.W.2d 160 (Tex.1973); *Tex. Ind. Traffic League v. Railroad Com'n. of Texas,* 672 S.W.2d 548 (Tex.App. —Austin 1984). It has been said that where a statute has been reenacted by the Legislature with knowledge of the judicial construction thereof a court would not be justified in overruling such decision. *Brown v. State,* 150 Tex.Cr.R. 386, 196 S.W.2d 819 (1946), cert. den., 331 U.S. 824, 67 S.Ct. 1314, 91 L.Ed. 1840.

Further, as earlier noted, when a statute is of a nature that it might be construed in one court as well as another respect is to be given to the decision of the court giving the first interpretation. *Redman v. State,* 67 Tex.Cr.R. 374, 149 S.W. 670 (1911). In *King v. State,* 160 Tex.Cr.R. 556, 273 S.W.2d 72 (1954), such rule was applied. As explained in *Jernigan v. State,* 166 Tex.Cr.R. 302, 313 S.W.2d 309 (1958), criminal courts will follow the policy of adopting the construction of a statute first given by civil courts, such policy being

deemed necessary to the proper administration of justice and to the existence of harmony in the statute law of the State.

And the Supreme court of Texas ordinarily follows the Court of Criminal Appeals in its interpretation of penal laws, *Stakes v. Rogers,* 139 Tex. 650, 165 S.W.2d 81 (1942); *Kadane v. Clark* 135 Tex. 496, 143 S.W.2d 197 (1940); *State v. Ferguson,* 133 Tex. 60, 125 S.W.2d 272 (1939); *State ex rel. Shook v. All Texas Racing Ass'n.,* 128 Tex. 384, 97 S.W.2d 669 (1936); *Shrader v. Ritchey,* 158 Tex. 154, 309 S.W.2d 812 (1958). And such policy extends to situations where the Court of Criminal Appeals has declared a statute unconstitutional. *State ex rel. Pettit v. Thurmond,* 516 S.W.2d 119 (Tex.1974).

We are well aware of the fact that there are out-of-state cases holding mandatory legislative continuance statutes unconstitutional on the basis of the separation of powers doctrine,[20] however, after due consideration of respondent's argument, a reexamination of Justice Norvell's reasoning in *Government Services Ins. Underwriters v. Jones,* supra, and taking into account the doctrine of stare decisis and the past policy of this Court, we adhere to the Supreme Court's decision and overrule respondent's contention.

To justify mandamus relief, however, the relator must establish both that (1) he lacks any other adequate remedy at law, and that (2) the act sought to be compelled is purely ministerial as opposed to discretionary. *State ex rel. Vance v. Routt,* 571 S.W.2d 903 (Tex.Cr.App.1978).

Of course, the relator would have the right to appeal if convicted after a trial on the merits with great expense to himself and the State. He could then raise the point of error that the trial court reversibly erred in overruling his motion for legislative continuance based on a mandatory statute. It is well established that failure to grant a mandatory legislative continu-

**20.** *Williams v. Burdon's, Inc.* 274 S.C. 275, 262 S.E.2d 881 (1980); *McConnell v. State,* 227 Ark. 988, 302 S.W.2d 805 (1957); *Johnson v. Theodoron,* 324 Ill. 543, 155 N.E. 481 (1927); *Kyger v.*

*Koerper,* 355 Mo. 772, 207 S.W.2d 46 (1946); *Booze v. District Court of Lincoln County,* 365 P.2d 589 (Okla.Crim.App.1961).

ance will result in automatic reversal. *Glover v. State,* supra; *Cuellar v. State,* supra; *King v. State,* supra. A retrial or retrials could then ensue at great expense to both parties. The right of appeal could hardly be said to be a plain, effective and adequate remedy at law nor would it benefit the State or its witnesses.

"The other remedy must not only be adequate in the general sense of the term, but must be specific and appropriate to the particular circumstances of the case, that is the remedy must afford relief on the very subject matter of the controversy and give the relator the particular right that the law affords him." Tex.Jur.3rd, Extraordinary Writs, Vol. 38, § 127, p. 262.

In the traditional sense then relator Collier would not have another adequate remedy by the way of appeal. Most important here, however, is that the real party at interest in the instant cause is State Representative Danburg and her own statutory right or privilege under said § 30.003 to a mandatory legislative continuance based on a well-established public policy.[21] The right of appeal by relator Collier could hardly be said to be another adequate remedy for lawyer/legislator Danburg.

 Further, when there has been a compliance with the provisions of said § 30.003 in regard to a motion for legislative continuance, as in the instant case, and there is a showing that neither the statutory exception nor the due process exception is applicable, then the trial court has no discretion except to grant the motion, the statute being mandatory. The act of the court under such circumstances is ministerial in nature, not discretionary.

 The relator and Representative Danburg are entitled to the relief sought. A proper basis has been shown for the issuance of a writ of mandamus ordering the respondent to vacate his orders denying the motions for continuance in Cause Nos. 459,914 and 459,915, and to grant such

motions. Further, the order prohibiting Representative Danburg from being an attorney of record in said cause numbers must be set aside.

In accordance with this opinion we expect the respondent, Judge Poe, to take the appropriate action. If not, the writ of mandamus will issue.

It is so ordered.

WHITE, J., concurs.

McCORMICK, J., concurs in the result only.

---

21. In *King v. State,* 160 Tex.Cr.R. 556, 273 S.W.2d 72, 73 (1954), it was held that the legislative continuance motion should have been granted although it was "a clear abuse of the privilege by one entitled to claim it under the statute." In *Government Services Ins. Underwriters v. Jones,* supra, it was also stated: "The statutory right or privilege of the legislator...."